### THROCKMORTON v. HICKMAN et al.

### In re AMERICAN BOX CO.

(Circuit Court of Appeals, Third Circuit. February 27, 1922.)

### No. 2757.

1. **Judgment** ⊚497(1)—**Verity of record not impeachable collaterally, when rendered by court of general jurisdiction.**

The verity of the record and the validity of a judgment of a superior court of general jurisdiction cannot be collaterally impeached.

2. **Judgment** ⊚485—**Disregarded in collateral proceeding, when record shows want of jurisdiction.**

Where it appears by the record itself that the judgment of a court of general jurisdiction has been rendered without jurisdiction either of the subject-matter or of the person of the defendant, or, in actions purely or quasi in rem, of his property, the judgment may, in collateral proceedings, be disregarded, and treated as a nullity.

---

⊚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Judgment ⬤501—Improper joinder of causes held not to affect validity of judgment on collateral attack.**

Assuming that under the law of New Jersey a cause of action for the appointment of a receiver of an insolvent corporation was improperly joined with a cause of action against chattel mortgages of the corporation's property on allegations of fraud and conspiracy, the error of the court in exercising jurisdiction over the two actions was one for its own correction, or for correction by an appellate court, and does not affect the validity of the judgment, when collaterally drawn in question.

**4. Judgment ⬤828(1)—Entry of final decree by vice chancellor without reference held not to render decree subject to collateral attack.**

Assuming that under the law of New Jersey a vice chancellor could not, without an order of reference, consider the merits of a case and enter a final decree, the irregularity in the rendition of a decree on the merits was only an error, and not a want of jurisdiction, depriving the judgment of full faith and credit in other courts, until altered by the court itself or by another court on appeal.

**5. Equity ⬤431—Where court received and considered evidence, decree dismissing bill in part regarded as on merits.**

Where, in a suit for the appointment of a receiver for a corporation and for relief against a fraudulent chattel mortgage, the vice-chancellor did not strike the portion of the bill affecting the mortgage or refuse to consider it, but received evidence on that feature of the case and deliberated on it, his decree of dismissal must be considered as based on the merits.

**6. Judgment ⬤504(3)—Dismissal of bill in part, instead of striking out or refusing to consider such part, not open to collateral attack.**

If, under New Jersey procedure, the vice chancellor, in a suit for the appointment of a receiver of a corporation and for relief against a fraudulent chattel mortgage, should have stricken out the portion of the bill affecting the chattel mortgage or refused to consider it, his action in dismissing the bill on the merits was only an irregular exercise of jurisdiction, and not a usurpation without jurisdiction, as respects collateral attack.

**7. Judgment ⬤585(2)—Cause of action to set aside chattel mortgage and vacate sale held the same as that in an earlier suit.**

The cause of action alleged in a suit by a corporation's trustee in bankruptcy to set aside a chattel mortgage and vacate a sale on allegations of fraud and invalidity *held* the same as that set up in a suit brought prior to bankruptcy in a state court by a creditor and stockholder on behalf of himself and all others similarly situated.

**8. Judgment ⬤678(1)—Identity of parties between creditor and stockholder, suing in behalf of class, and trustee in bankruptcy, subsequently appointed.**

Within the doctrine of res judicata, there is identity of parties between a stockholder and creditor, suing on behalf of all stockholders and creditors to set aside a chattel mortgage, and the corporation's trustee in bankruptcy, suing for the same relief on behalf of all creditors and stockholders.

**9. Bankruptcy ⬤151—Title acquired by trustee stated.**

The trustee of a bankrupt corporation acquires such title to property as the bankrupt itself had, and in addition such as execution creditors may have.

**10. Bankruptcy ⬤245—Trustee of corporation represents stockholders and creditors in suit to recover assets.**

A trustee in bankruptcy, in an action to protect or recover the bankrupt's assets, stands for and in the place of creditors and stockholders of the bankrupt.

Appeal from the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit by LeRoy S. Throckmorton, trustee of the American Box Company, bankrupt, against J. Parker Hickman and others. From a decree dismissing the bill, plaintiff appeals. Affirmed.

Warner & Warner, of Newark, N. J., for appellant.

Joseph R. Megill and Durand, Ivins & Carton, all of Asbury Park, N. J. (Warren Dixon, of Jersey City, N. J., of counsel), for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. This is a plenary action brought by the trustee of a bankrupt corporation to set aside a chattel mortgage of the corporation, to vacate a sale thereunder and to recover, free from lien, the chattels covered by the mortgage. The same matter had been before the Court of Chancery of the State of New Jersey in an action instituted by another plaintiff against the same defendants. The District Court, holding that the cause of action was res judicata, dismissed the bill.

The plaintiff, by this appeal, brings here for review the one ground on which the decree was based. This calls for a careful consideration of the action in the Court of Chancery of the State of New Jersey.

From the record in that case, now before us, it appears that Thomas, a creditor and stockholder of American Box Company, filed a bill on behalf of himself and all other creditors and stockholders who should come in and contribute to the expense of the suit. The defendants named in the bill were American Box Company, a corporation, and seven persons who were described as mortgagees of a chattel mortgage made by the corporation. While the eight defendants, corporate and personal, were joined generally, separate relief was sought against the corporate defendant and against the group of personal defendants. All relief, however, was directed to the one object of conserving corporate assets for the benefit of stockholders and creditors. The bill charged, inter alia, that the personal defendants had acquired a chattel mortgage from the corporation which was not executed and recorded in accordance with a statute of the State of New Jersey; that the consideration was invalid because in part for a pre-existing debt; that a foreclosure sale under the mortgage, as well as the mortgage itself, was void because, in a word, the whole transaction was a fraudulent scheme or conspiracy on the part of the mortgagees to acquire the property of the corporation, then insolvent, in fraud of stockholders and creditors. Passing from the personal defendants, the bill reiterated the charge that the corporation was insolvent, and concluded with several prayers. One was for the appointment of a receiver for the corporation. This prayer was directed against the defendant corporation. The others, directed against the defendant mortgagees, were, that they make discovery of the goods and chattels which they had acquired by foreclosure of the chattel mortgage and that they be forever enjoined from selling or otherwise disposing of any of the property and effects of the corporation so acquired.

The Vice Chancellor made an order temporarily restraining the defendant mortgagees and commanding them to show cause why an injunction should not issue according to the prayer of the bill and

commanding the corporation to show cause why a receiver should not be appointed according to the statute.

What did the Court of Chancery do under the bill with its separate prayers against defendants of different characters? It received and considered many supporting and answering affidavits, first, with reference to the solvency of the corporation, and next with reference to the alleged transaction of fraud and conspiracy. In due course the Vice Chancellor entered a decree by which he appointed a receiver for the corporation on the ground of its insolvency and, vacating the restraining order, dismissed the bill against the defendant mortgagees.

On its face, the decree of the Court of Chancery on the allegations of the bill charging statutory irregularity in the execution of the mortgage and fraud in its delivery has all the appearance of being final, placing upon everyone interested the compulsion of observing its mandate or appealing. Certain of the creditors of the corporation were not disposed to follow either course but filed in the District Court of the United States for the District of New Jersey an involuntary petition in bankruptcy against the corporation, where, through the trustee later appointed, they caused this action to be brought against the same seven mortgagees on a bill making the same allegations of fraud and invalidity of the chattel mortgage and sale and praying for the same relief as in the bill in the Court of Chancery. The few differences in the stating part and praying part of the bills in the two actions are negligible. The decree of the District Court dismissing the bill followed.

The appellant meets the issue of res judicata by denying that the essential identities of the doctrine are present and by asserting that the decree of the Court of Chancery was not an adjudication at all.

The appellant's attack upon the decree of the Court of Chancery on the latter ground is threefold: First, that the decree was in a case declaring on two actions not triable together; second, that the court did not have jurisdiction to decide the case; and, third, that the decision was not upon the merits.

[1, 2] As to the extent to which this federal court will inquire into the jurisdiction of a state court to render judgment in a case tried and decided by it, we make these observations, preliminarily. It is an established rule that the verity of the record and the validity of a judgment of a superior court of general jurisdiction cannot be collaterally impeached. A distinction in this rule has been observed between the want of jurisdiction and the irregular or erroneous exercise of it. Where it appears by the record itself that the judgment of such a court has been rendered without jurisdiction either of the subject-matter or of the person of the defendant, or in actions purely or quasi in rem of his property, such judgment may, in collateral proceedings, be disregarded and treated as a nullity. The expression of this rule, both in its origin and in its evolution from attack upon a judgment by matter intrinsic of the record to attack by matter extrinsic, is found in the familiar cases of Galpin v. Page, 18 Wall. 350, 21 L. Ed. 959; Voorhees v. Bank, 10 Pet. 475, 9 L. Ed. 490; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Thompson v. Whitman, 18 Wall. 457, 21 L. Ed. 897; Needham v. Thayer, 147 Mass. 537, 18 N. E. 429; Mitchell v.

Garrett, 5 Houst. (Del.) 34; Frankel v. Satterfield, 9 Houst. (Del.) 201, 19 Atl. 898.

The line which distinguishes between the want of jurisdiction and the irregular or erroneous exercise of it, the Supreme Court said in Voorhees v. Bank, supra, "is very definite; and is precisely that which denotes the cases where a judgment or decree is reversible only by an appellate court, or may be declared a nullity collaterally, when it is offered in evidence in an action concerning the matter adjudicated, or purporting to have been so. In the one case, it is a record importing absolute verity; in the other, mere waste paper."

Continuing the Supreme Court said:

"The general and well-settled rule of law in such cases is that, when the proceedings are collaterally drawn in question, and it appears on the face of them that the subject-matter was within the jurisdiction of the court, they are voidable only. The errors and irregularities, if any exist, are to be corrected by some direct proceeding, either before the same court, to set them aside, or in an appellate court. If there is a total want of jurisdiction, the proceedings are void, and a mere nullity, and confer no right, and afford no justification, and may be rejected, when collaterally drawn in question."

With this distinction stated, we come to the question of jurisdiction of the Court of Chancery of the State of New Jersey to render the judgment now pleaded as res judicata of the pending action.

[3] The appellant takes the position that the bill is for the appointment of a receiver of an insolvent corporation and that it is improper under the law of New Jersey to join in such a bill any other cause of action. Stated differently, the appellant's contention is, as we understand it, that it is improper to join in one bill an action for the appointment of a receiver under the statutory jurisdiction of the court and another action within the general jurisdiction of the court. We may assume without deciding that such is the law of New Jersey; yet if the court violated that rule of procedure, it erred because of the irregularity with which it exercised its jurisdiction over the two actions. That it had jurisdiction over both actions, we think, is not questioned. Therefore, if error, it was one for its own correction or for correction by an appellate court of the state of New Jersey. The validity of such a judgment will not, under the authorities cited, be inquired into or disturbed when, as here, it is collaterally drawn in question.

[4] The appellant next contends that the Vice-Chancellor who heard the case was wholly without jurisdiction to make a decree on the merits. This is based upon the representation that, under the rules of his court, the Vice Chancellor cannot without an order of reference consider the merits and enter a final decree. If this is the law of New Jersey—and of this we are not satisfied—then again there was error because of irregularity of procedure rather than want of jurisdiction to render judgment, and the situation arises where other courts will give full faith and credit to the judgment as it stands until altered by the court itself or by another court on appeal.

[5, 6] The appellant bases the two preceding contentions on his conception of the decree of the Court of Chancery. With reference to the decree he says:

"The Court of Chancery in the order referred to directed that 'the bill as filed herein and as affecting (the chattel mortgagees) be and the same is hereby dismissed,' whereas the order *should have read* that that portion of the bill affecting the chattel mortgagees *be stricken out*, or *be not considered*."

But the Vice Chancellor did not strike out the portion of the bill affecting the chattel mortgagees or refuse to consider it. . He accepted the supporting and answering affidavits on the chattel mortgage feature of the bill and ultimately rendered judgment thereon by dismissing the bill as to the defendant mortgagees. Clearly, if the learned Vice Chancellor was moved to his decree dismissing the bill out of regard for practice or procedure which forbade his deciding the question of the chattel mortgage on the merits, he would have said so and, doubtless, he would have said so in limine; but after receiving the evidence and deliberating upon it, we must construe his decree of dismissal as based on it. If under New Jersey procedure he should have taken another course in passing on the averments of the bill with reference to the invalidity of the chattel mortgage and sale, we are constrained to believe that his action was one involving the irregular exercise of his jurisdiction and not one of usurpation without jurisdiction.

[7] We are of opinion, therefore, that so far as the District Court of the United States is concerned the decree of the Court of Chancery of the State of New Jersey was pleadable in this action. Maddocks v. Gushee (Me.) 113 Atl. 300. Being pleaded, whether it constitutes res judicata depends upon the concurrence of the four essential conditions of the doctrine. We hold without stating the facts that the cause of action in the District Court is the same as that in the Court of Chancery so far as the personal defendants in both actions are affected. The test, as laid down by Judge Story in Lawrence v. Vernon, 3 Sumn. 22, Fed. Cas. No. 8,146, is whether the same facts will support both actions. We think they will. The identity of actions is therefore established. By the same reasoning the identity of the thing sued for is also established.

[8] On the requisites of identity of persons and of parties to the action and identity of the quality of the persons, the appellant raised what at first appealed to us as a grave question. The plaintiff in the Court of Chancery described himself as a creditor and stockholder of the corporation and brought his bill for himself and all other creditors and stockholders who chose to join him. As we have seen, no creditor and no stockholder came in. But later, creditors, having had this opportunity for the assertion of their rights, went to the District Court of the United States and through appropriate procedure obtained the appointment of a trustee in bankruptcy, who, representing both creditors and stockholders, filed this bill on the same facts to obtain the same relief. The appellant urges that there is a positive lack of identity of parties in the two actions. The question whether there is a identity of parties as between a trustee in bankruptcy (plaintiff in a suit in a federal court), and a stockholder and creditor (plaintiff in a class action in a state court), rests primarily on the question whether there would be identity of parties if both suits had been brought by different persons of the same class of stockholders and creditors. This question was set at rest by Willoughby v. Chicago J. & U. S. Co., 50

N. J. Eq. 656, 25 Atl. 277. That was a case heard by a Vice Chancellor on bill and answer—and it may be pertinent to note that it was finally decided by him without a reference to a master or to a jury— holding, that in the absence of fraud or collusion a class action by one stockholder is conclusive upon another who fails to come in, so far as it affects similar questions. The authorities are very well considered. Upon these authorities we take the next step and hold that, within the doctrine of res judicata, there is identity of parties between stockholders and creditors of a corporation in one action and trustee of the corporation in bankruptcy in another action. We arrive at this judgment under the general rule that:

"It is not always necessary that the parties to the two suits should be nominally the same in order that one recovery may bar another. It is in general sufficient if they are really and *substantially in interest* the same." Black on Judgments, § 537.

"In most, if not in all, cases of this sort, the decree obtained upon such a bill will ordinarily be held binding upon all other persons *standing in the same predicament*, the court taking care that sufficient persons are before it, honestly, fairly and fully to ascertain and try the general right in contest." Story, Eq. Pl. § 120.

[9, 10] Bankruptcy stops, temporarily or finally, the business activities of a corporation. The trustee of a bankrupt corporation acquires such title to its property as the bankrupt itself had, and in addition, such as execution creditors may have. The disposition of bankrupt assets is made exclusively for the benefit of creditors and stockholders of the bankrupt corporation. In the enforcement of their rights the trustee can do by law substantially all that they themselves could have done before bankruptcy. A trustee in bankruptcy in an action to protect or to recover bankrupt assets stands for and in the place of creditors and stockholders of the bankrupt corporation. Therefore, we think it within the doctrine of res judicata that such an officer representing in full measure all rights of stockholders and creditors should be regarded as identical with stockholders and creditors who theretofore had exerted rights in their own behalf.

The decree below is affirmed.